CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

2017 MAY -2  AM 9: 11

DEPUTY CLERK _____

| | | |
|---|---|---|
| **CHRISTOPHER LYNN HILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 1:17-CV-0021-BL |
| | ) | |
| **JIM MCKENZIE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

This action has been referred pursuant to the provisions of 28 U.S.C. § 636(b), and Amended

Special Order No. 3-301. Because the parties have not consented to have all further proceedings in

this case conducted by a magistrate judge, the undersigned issues this report and recommendation

and directs that this case be reassigned to Senior District Judge Sam R. Cummings.

## I. BACKGROUND

On February 13, 2017, and through a purported Power of Attorney, James W. Myart, Jr.,

signed and filed this action for *pro se* Plaintiff Christopher Lynn Hill against various officials of

Sweetwater, Texas. *See* Compl. at 1, 11. Attached as an exhibit to the Complaint is the agreement

purporting to appoint Mr. Myart as "Attorney-in-fact" for Mr. Hill and to grant Mr. Myart power of

attorney to take various actions on Plaintiff's behalf, including litigation matters. *See* Ex. 1 ¶¶ 2, 6f.

That agreement purports to provide for compensation to Mr. Myart as a "consultant," permit co-

owning and mingling of assets, and permit Mr. Myart to personally gain from management of Mr.

Hill's affairs. *See id.* ¶¶ 7-9. Through the Power of Attorney, Mr. Myart also signed an Application

to Proceed in District Court Without Prepaying Fees or Costs (doc. 3) (hereinafter "IFP Motion")

on behalf of Plaintiff.

On March 2, 2017, the undersigned issued a Memorandum Opinion and Order to Show Cause (doc. 6) explaining that Mr. Myart is not authorized to represent other parties in federal court and discussing whether he engaged in sanctionable conduct by filing this action. Accordingly, the undersigned directed that (1) Mr. Myart provide an address for Plaintiff on or before March 13, 2017; (2) Mr. Myart show cause in writing, on or before March 30, 2017, why the Court should not impose sanctions against him for violating an injunction issued by the Supreme Court of Texas or otherwise engaging in the unauthorized practice of law in this Court; and (3) Plaintiff file an amended complaint and either pay the filing and administrative fees for this action or file a properly signed and completed motion to proceed *in forma pauperis* on or before March 30, 2017. At that point, the undersigned anticipated obtaining an address for Plaintiff in sufficient time to inform Plaintiff about the March 30, 2017 deadlines.

The first deadline passed without any submission by Mr. Myart. The day before the second deadline, Mr. Myart filed a Motion for Extension of Time to Respond to Motion for Show Cause and Non-Approval to Conduct Trial Before Magistrate (doc. 7). He asked for a sixty-day extension of time to respond to the show cause order but neither mentioned nor addressed the deadline for providing an address for Plaintiff. Granting the motion in part, the undersigned directed Mr. Myart to provide an address for the Hills by April 14, 2017, and to show cause in accordance with the prior court order on or before April 26, 2017. The undersigned also stated that the Court will address the other deadlines after receiving an address for Plaintiff and stated that a "failure to comply with this order may result in court-imposed sanctions, including a monetary sanction payable to the Court."

Despite the April 14, 2017 deadline, Mr. Myart did not provide an address for Plaintiff. At that point it thus appeared that Mr. Myart had no further desire to pursue this action on behalf of Mr.

Hill. However, in response to a similar deadline in Case No. 1:17-CV-0025-BL, Mr. Myart untimely

provided an address for Mr. Hill and, on April 28, 2017, Mr. Myart filed an untimely response to the

order to show cause in this case. The failures to provide an address specifically for this case and to

timely respond to the show cause order exhibit a disregard for an order of this Court.

Moreover, as expressed in the order to show cause, the undersigned is concerned about juris-

diction in this case and the actions of Mr. Myart in light of an injunction issued by the Texas

Supreme Court. The untimely response to the show cause order does not address the jurisdictional

issue and does little to alleviate concerns about Mr. Myart's conduct. Mr. Myart agrees that he sur-

rendered his law license in lieu of discipline and that he remains subject to the injunction of the

Texas Supreme Court as set out in the order to show cause. *See* Resp. (doc. 9) ¶ 2. He states that

(1) he has never hidden that fact; (2) he has powers of attorney for Mr. Hill; (3) he has owned Myart

Consulting Group since surrendering his law license and informs each client that he does not have

a law license, is not giving legal advice, and does not represent himself as a licensed attorney; (4)

through the granted powers of attorney he filed this action without knowledge of the legal principles

that prohibit filings on behalf of others; (5) he did not intentionally violate those principles; (6) he

believes that Plaintiff has valid federal question claims and has advised him to obtain private

counsel; and (7) he requests that Defendants be served and leniency of the Court. *Id.* ¶¶ 2-10. Nota-

bly, the response's signature line identifies Mr. Myart as "James W. Myart, Jr., JD." *See id.* at 4.

Mr. Myart provides an agreement between himself and Ms. Hill to support his statement that

he informs each client that he "does not have a law license, is not giving legal advice and does not

represent himself as a licensed attorney." *See id.* ¶ 4; Ex. 1 attached to Resp. That agreement ap-

pears to show that Ms. Hill has entered into an employment contract with Myart Consulting Group

3

for services related to a pro se matter for her son. *See* Ex. 1. Deciphering the cryptic text is no easy

task given the numerous typographical and punctuation errors that compel readers to make various

inferences so as to reach a coherent meaning.[1] *See id.* Nevertheless, the agreement does appear to

state that Hill clearly understands that Myart "has not represented himself as an attorney" and is "not

licensed as an attorney." *Id.* However, the agreement also initially identifies Mr. Myart as "James

Myart, JD" and seems to show that Mr. Myart will review the matter; make a referral for personal

injury attorney, if necessary; and/or provide the son with information so that he can file a pro se

action for the consideration set out in the agreement. *See id.*

Given the concerns noted in the Memorandum Opinion and Order to Show Cause and after

further reviewing this case and the response to the show cause order, the undersigned issues this

report and recommendation.

## II. JURISDICTION

For purposes of this order, the Court should assume without deciding that Plaintiff has

entered into a valid agreement granting Mr. Myart power of attorney. Even with that assumption,

however, Mr. Myart is not authorized to represent Plaintiff or any other *pro se* party in federal court.

By statute, a federal litigant "may plead and conduct their own cases personally or by counsel." *See*

---

[1]To fully appreciate the agreement signed by Ms. Hill, the full text is set out below:

Please print the following employment agreement signed and resend to me this is an employment agreement between Harriet Hill and Myart Consulting Group, James Myart, JD. Gil hibben employees James my art to evaluate a personal injury matter for her son my heart has not represented himself as an attorney and it's not licensed as an attorney that is clearly understood by Hill will review the entire matter and make a referral for personal injury attorney if necessary and or provide him the necessary information to file a case the case will be filed by her son Pro Se for consideration of this agreement Hill agrees to pay myart at a rate of $225 per hour for a total maximum of $10 or $2,250 with a $500 down payment made immediately and $200 a month for the balance beginning February 1st 2017 signed Harriet Hill and countersigned by James my art

This agreement is agreed upon by Harriet Hill. Dated : 12/04/2016 @ 5:05 p.m.

28 U.S.C. § 1654. Based on all information before the Court, Mr. Myart is no longer an attorney authorized to practice law in Texas or elsewhere. "Mr. Myart was a practicing attorney for many years before surrendering his bar card in lieu of disbarment in 2008." *Myart v. Taylor*, No. 5:16-CV-736-DAE, 2016 WL 5376227, at *1 n.1 (W.D. Tex. Sept. 26, 2016); *accord Myart v. Glosson*, No. 5:16-CV-865-XR, 2016 WL 5389248, at *1 n.1 (W.D. Tex. Sept. 26, 2016) ("Myart used to be a licensed attorney, but has since resigned in lieu of disciplinary action.").

Indeed, on June 17, 2008, the Supreme Court of Texas accepted Mr. Myart's resignation as attorney and counselor at law as "in the best interest of the public and the profession." *See In re Myart*, Misc. Docket No. 08-9072, at 1 (Tex. June 17, 2008). In addition to cancelling Mr. Myart's law licence and deleting him "from the list of persons licensed to practice law in Texas," the Texas Supreme Court permanently enjoined him

> from practicing law in the State of Texas, holding himself out as an attorney at law, performing legal services for others, giving legal advice to others, accepting any fee directly or indirectly for legal services, appearing as counsel or in any representative capacity in any proceeding in any Texas court or before any Texas administrative body (whether state, county, municipal, or other), or holding himself out to others or using his name in any manner in conjunction with the words "Attorney at Law," "Counselor at Law," "Lawyer," or "Attorney."

*Id.* at 1-2.

As an unlicensed, former attorney, Mr. Myart may not represent Plaintiff in this action. Section 1654 does not permit a non-attorney to represent a litigant in federal court and even a valid power of attorney does not permit it. *Williams v. United States*, 477 F. App'x 9, 11 (3d Cir. 2012) (per curiam). While a power of attorney "may confer certain decision-making authority under state law," it does not change the requirements of § 1654. *See id.*; *accord Speed v. Bank of N.Y.*, No. 3:14-CV-3425-L-BN, 2014 WL 6473420, at *2 (N.D. Tex. Nov. 18, 2014) (recommendation of

Mag. J.), *case dismissed without addressing recommendation*, 2014 WL 6487291 (N.D. Tex. Nov.

19, 2014) (declining to address recommendation while recognizing its correctness). "[T]he holder

of a power of attorney is not authorized to appear pro se on behalf of the grantor." *Estate of Keat-

inge v. Biddle*, 316 F.3d 7, 14 (1st Cir. 2002) (recognizing such principle under the laws of Maine).

To proceed "*pro se* means to appear for one's self," therefore, "a person may not appear on another

person's behalf in the other's cause." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (cited

with approval in *Martin v. City of Alexandria*, 198 F. App'x 344, 346 (5th Cir. 2006) (per curiam)).

"A power of attorney relationship between a *pro se* plaintiff and the individual appearing on [his or]

her behalf does not alter this principle." *Leyfert v. Commw. of Pa. House of Reps.*, No. Civ. A. 05-

4700, 2005 WL 3433995, at \*3 (E.D. Pa. 2005). Similarly, an "attorney-in-fact" may not litigate a

*pro se* action on behalf of another. *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001).

Although some circumstances may warrant filing on another's behalf as a "next friend,"

"individuals not licensed to practice law by the state may not use the 'next friend' device as an arti-

fice for the unauthorized practice of law." *Weber v. Garza*, 570 F.2d 511, 514 (5th Cir. 1978).

Nothing before the Court indicates that use of the "next friend" device is proper in this case. When

a non-attorney is not qualified to act as a "next friend," the non-attorney "may not participate in the

unauthorized practice of law by preparing legal papers, filing petitions and briefs, and generally

acting as an attorney in violation of state and federal provisions governing the unauthorized practice

of law." *Id.* Even a valid power of attorney executed by the *pro se* Plaintiff does not invest the non-

attorney with such authority. *Id.*

As a non-attorney, Mr. Myart "lacks standing to file this action on behalf" of Plaintiff. *See*

*Leyfert*, 2005 WL 3433995, at \*3. "It follows from the rule prohibiting lay representation that any

pleadings filed through lay representation must be disregarded as a nullity." *Umstead v. Chase Manhattan Mortg. Corp.*, No. 7:04-CV-00747, 2005 WL 2233554, at *2 (W.D. Va. Sept. 13, 2005). Consequently, the complaint is void *ab initio*, *see id.*, and is subject to dismissal for lack of jurisdiction, *see Leyfert*, 2005 WL 3433995, at *3. Upon initial review of this action, the undersigned concluded that an outright dismissal of the complaint was not warranted at that juncture without providing them an opportunity to cure the deficiencies of the complaint and submitted IFP Motion. Now that Mr. Myart has provided an address for Mr. Hill in his other action, the Court may utilize that address to provide Plaintiff notice of this recommendation and he will have an opportunity to object to the proposed disposition of this case. Mr. Myart, furthermore, has stated that he has informed Mr. Hill about the show cause order. Consequently, on further reflection and after considering Mr. Myart's response to the order to show cause, it is recommended that the Court dismiss this action for lack of jurisdiction. Such dismissal would be without prejudice to Mr. Hill filing a new civil action on his own or through retained counsel.

### III. IFP MOTION

The IFP motion is deficient. Accordingly, the Court should deny it. Although such denial is typically without prejudice to correcting the deficiency, there is no need to provide an opportunity to correct any deficiency given the recommendation that the Court dismiss this action for lack of jurisdiction.

### IV. SANCTIONS

The federal courts possess the inherent power "to protect the efficient and orderly administration of justice and . . . to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir.1993). Such power includes "the power to levy

sanctions in response to abusive litigation practices." *Id.* The Supreme Court, furthermore, has recognized "that a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). This power naturally extends to sanctioning a former attorney who purports to act pursuant to a power of attorney.

In this case, sanctions appear warranted given the actions of Mr. Myart in filing this action on behalf of Plaintiff. Furthermore, after the order to show cause entered in this case, Mr. Myart failed to provide an address for Plaintiff in this case and untimely responded to the show cause order. It is not unreasonable to expect a former attorney to know and understand the law regarding filing a civil action and practicing law before this Court. Mr. Myart's actions are particularly troubling given the injunction imposed against him by the Supreme Court of Texas. Among other things, that injunction specifically forbids Mr. Myart from practicing law in Texas, providing legal services for others, giving legal advice to others, accepting any fee for legal services, or appearing in a representative capacity in any proceeding in any Texas court. His actions in this case appear to violate that injunction and he cannot sidestep the injunction by claiming he acts only as a consultant.[2] His response to the show cause order provides no basis for finding that he has not violated the injunction. To the contrary, the response and attached agreement provide additional reason to be concerned about his conduct. The supporting exhibit appears to show a fee arrangement for services related to a legal matter and Mr. Myart uses "JD" in both the signature block of the response and within the agreement provided in support.

---

[2]The Court should take judicial notice of the complaint filed in *Hill v. First Financial Bank Shares*, No. 1:17-CV-0025-BL, a related case filed in this Court. In that complaint, the plaintiffs allege that they submitted a completed loan application "in order to pay to Myart Consulting Group a $15,000 fee plus expenses of suit, estimated at $25,000, for their lawsuit against the City of Sweetwater, et al." *See Hill*, No. 1:17-CV-0025-BL (doc. 1 at 4). In addition, the IFP Motion in this case indicates that Plaintiff will be paying an unspecified person $8,000 for expenses and consultant fees in conjunction with this lawsuit. *See* IFP Motion ¶ 10.

In Texas, an individual can be criminally prosecuted for the unauthorized practice of law.

*See* Tex. Penal Code Ann. § 38.123.  Texas law, furthermore, defines "practice of law" as

> the preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined.

Tex. Gov't Code Ann. § 81.101(a).  In general, courts prohibit "the unauthorized practice of law because of a perceived need to protect individuals and the public from the mistakes of the untrained and the schemes of the unscrupulous, who are not subject to the judicially imposed disciplinary standards of competence, responsibility and accountability." *See* Texas Center for Legal Ethics, https://www.legalethicstexas.com/Ethics-Resources/Rules/Texas-Disciplinary-Rules-of-Professional-Conduct/V--LAW-FIRMS-AND-ASSOCIATIONS/5-05-Unauthorized-Practice-of-Law (last visited May 1, 2017).

In light of the above discussion regarding sanctions, the undersigned directed Mr. Myart to show cause in writing why the Court should not impose sanctions against him for violating the injunction issued by the Supreme Court of Texas or otherwise engaging in the unauthorized practice of law in this Court.  Mr. Myart has not shown cause why the Court should not sanction him.  Accordingly, the Court should impose a reasonable sanction through its inherent powers.  It should consider all reasonable sanctions necessary to deter future conduct by Mr. Myart or otherwise deemed warranted under the circumstances of this case.  The order to show cause set out various sanctions that might be considered.  Sanctions to be considered should include a monetary sanction payable to the Court or to the other plaintiffs as his purported consulting clients; disgorgement of any im-

proper fees obtained from his sanctionable conduct; a report to the Unauthorized Practice of Law Committee ("UPLC") or other appropriate discipline committee that oversees attorneys or former attorneys; and any other sanction the Court deems reasonable under the circumstances.

The circumstances appear to at least warrant publically admonishing Mr. Myart about his actions and imposing a monetary sanction payable to the Court. A report to UPLC also appears warranted, but if the Court decides that it should not make such report or finds that the circumstances may not warrant such a report, it should consider directing Mr. Myart to seek an appropriate opinion as to whether his conduct constitutes the unauthorized practice of law in violation of the injunction of the Texas Supreme Court.

## V. RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the Court (1) **DENY** the Application to Proceed in District Court Without Prepaying Fees or Costs (doc. 3); (2) **DISMISS** this action for lack of jurisdiction because Mr. Myart lacks standing to file this action on behalf of Plaintiff Christopher Hill and because the filed complaint must be disregarded as a nullity; and (3) **SANCTION** Mr. Myart as deemed warranted by the Court under the circumstances. Any juris-dictional dismissal should be without prejudice to Plaintiff filing a new civil action on his own or through retained counsel. Because the parties have not consented to proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to **REASSIGN** this case to Senior District Judge Sam R. Cummings.

The Clerk of Court shall mail a copy of this recommendation to Plaintiff at the address provided in Case No. 1:17-CV-0025-BL and to Mr. Myart. The Clerk shall note the new address for Plaintiff on the docket of this action and is directed to mail a copy of the Memorandum Opinion and

Order to Show Cause (doc. 6) and Order (doc. 8) dated April 5, 2017, to Plaintiff at that address.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED this** 2nd **day of May, 2017.**

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**